UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YURUANNY HILARIO,

                                                   **CIVIL NO.**

               Plaintiff,

      -against-                                  **COMPLAINT AND**
                                                     **JURY DEMAND**

UNITED STATES OF AMERICA,

               Defendant.
-----------------------------------------------------------------X

Plaintiff, YURUANNY HILARIO, by her attorneys SULLIVAN PAPAIN BLOCK McGRATH COFFINAS & CANNAVO P.C., for her Complaint against the defendant, UNITED STATES OF AMERICA ("USA"), alleges the following upon information and belief, at all times hereinafter mentioned:

## JURISDICTION & VENUE

1. Jurisdiction exists over plaintiff's claims against the USA by virtue of the Federal Tort Claims Act and pursuant to 28 U.S.C §§1331-32, 1346(b)(1), 1367(a) and 2671, *et seq.*, 42 U.S.C. §254b and 42 U.S.C. 233 (g)-(n) in that the plaintiff suffered injury by reason of the medical malpractice committed upon her by officers, agents, and employees of the USA acting within the scope and course of their employment at MORRIS HEIGHTS MEDICAL CENTER ("MORRIS HEIGHTS"), and that the Federal Tort Claims Act is the exclusive remedy for injuries, caused by employees deemed to be acting in the course of their employment for the federal government, which occurred on or after the date that said employees were deemed to be eligible for coverage, and that this exclusive remedy is provided by the Public Health Service Act pursuant to 42 U.S.C. § 233 (g)-(k).

2. Notice of this claim was timely made on the USA pursuant

to 28 U.S.C. § 2401(b) and §2675(a) by service of a Standard Form 95, Claim for Damage, Injury or Death, on the Department of Health & Human Services on or about May 13, 2021 and amended on May 26, 2021.

3. Jurisdiction is proper pursuant to the Federal Tort Claims Act, as the requisite Notice of Claim has been timely filed with the Department of Health and Human Services and more than six (6) months have elapsed without a final disposition by that agency.

4. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1402(b) inasmuch as the wrong complained of occurred within the Southern District of New York and that, pursuant to 28 U.S.C. §1391(b) and (c), at all relevant times MORRIS HEIGHTS was located in the Southern District of New York, which is where the events or omissions giving rise to the claim occurred, and that MORRIS HEIGHTS has sufficient contacts with the Southern District of New York to subject it to jurisdiction here.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 2671 et. seq. (The Federal Tort Claims Act) and 28 U.S.C. §1367(a).

6. The Federally Supported Health Centers Assistance Act of 1992, Pubic Health Law No. 102-501, 42 U.S.C. 233 (g)-(k) and the amended Act of 1995, Public Health Law No. 104-73, 42 U.S.C. 201, provides that the Federal Tort Claims Act is the exclusive remedy for injuries, including death, caused by employees deemed to be acting in the course of employment of the federal government which occurred on or after January 1, 1993 or when the employee was deemed eligible for coverage.

7. Plaintiff, YURUANNY HILARIO, has complied with the requirements of the Federal Tort Claims Act in that she first presented this claim to the USA within two (2) years after the subject claim accrued pursuant to 28 U.S.C. §2401(b).

# PARTIES

8. Plaintiff resides in New York County, City and State of New York.

9. At all times relevant, the medical clinic MORRIS HEIGHTS, was a federally supported medical facility.

10. At all times relevant, MORRIS HEIGHTS was a federally supported medical facility under the Federally Supported Health Centers Assistance Act of 1992, Pubic Health Law No. 102-501, 42 U.S.C. 233 (g)-(k) and the amended Act of 1995, Public Health Law No. 104-73, 42 U.S.C. 201.

11. All times relevant, the USA owned the medical facility known as the MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

12. At all times relevant, the USA operated the medical facility known as MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

13. At all times relevant, the USA supported the medical facility known as the MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

14. At all times relevant, the USA funded the medical facility known as the MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

15. At all times relevant, the USA managed the medical facility known as the MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

16. At all times relevant, the USA controlled the medical facility known as the MORRIS HEIGHTS HEALTH CENTER, located at 85 West Burnside Avenue, Bronx, New York 10453.

17. All times relevant, the USA owned the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

18. At all times relevant, the USA operated the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

19. At all times relevant, the USA supported the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

20. At all times relevant, the USA funded the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

21. At all times relevant, the USA managed the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

22. At all times relevant, the USA controlled the medical facility known as the MORRIS HEIGHTS HEALTH CENTER Harrison Circle Radiology, located at 57-69 West Burnside Avenue, Bronx, New York 10453.

23. MORRIS HEIGHTS, itself, and through its agents, servants and/or employees, rendered medical care and treatment to plaintiff, YURUANNY HILARIO, from on or about December 9, 2014, continuously thereafter, up through and including October 22, 2020.

24. Plaintiff, YURUANNY HILARIO was a patient of MORRIS HEIGHTS HEALTH CENTER.

25. SANJAY UPADHYAH, M.D. (hereinafter referred to as "UPADHYAH") was and still is a physician duly licensed to practice medicine in the State of New York and practices medicine at MORRIS HEIGHTS.

26. UPADHYAH was and still is an employee of MORRIS HEIGHTS, a federally funded health center pursuant to Section 330 of the Public Health Service Act (42 U.S.C. 254B).

27. At all times referenced herein, UPADHYAH was deemed to be an employee of the federal government.

28. UPADHYAH was acting within the scope of his employment for the USA from December 23, 2014, continuously thereafter, up through and including October 22, 2020.

29. At all times referenced herein, UPADHYAH was an employee, agent and/or servant of the USA.

30. RAFAELA M. DE LA HUERTA, FNP (hereinafter referred to as "HUERTA") was and still is a nurse practitioner duly licensed to practice medicine in the State of New York and practices medicine at MORRIS HEIGHTS.

31. HUERTA was and still is an employee of MORRIS HEIGHTS, a federally funded health center pursuant to Section 330 of the Public Health Service Act (42 U.S.C. 254B).

32. At all times referenced herein, HUERTA was deemed to be an employee of the federal government.

33. HUERTA was acting within the scope of her employment for the USA from August 23, 2016, continuously thereafter, up through and including October 22, 2020.

34. At all times referenced herein, HUERTA was an employee, agent and/or servant of the USA.

35. DANA SERAFIN, FNP (hereinafter referred to as "SERAFIN") was and still is a nurse practitioner duly licensed to practice medicine in the State of New York and practices medicine at MORRIS HEIGHTS.

36. SERAFIN was and still is an employee of MORRIS HEIGHTS, a federally funded health center pursuant to Section 330 of the Public Health Service Act (42 U.S.C. 254B).

37. At all times referenced herein, SERAFIN was deemed to be an employee of the federal government.

38. SERAFIN was acting within the scope of her employment for the USA from October 4, 2018, continuously thereafter, up through and including October 22, 2020.

39. At all times referenced herein, SERAFIN was an employee, agent and/or servant of the USA.

40. NARMIN MIZAN, M.D. (hereinafter referred to as "MIZAN") was and still is a physician duly licensed to practice medicine in the State of New York and practices medicine at MORRIS HEIGHTS.

41. MIZAN was and still is an employee of MORRIS HEIGHTS, a federally funded health center pursuant to Section 330 of the Public Health Service Act (42 U.S.C. 254B).

42. At all times referenced herein, MIZAN was deemed to be an employee of the federal government.

43. MIZAN was acting within the scope of his employment for the USA on or about January 24, 2019, continuously thereafter, up through and including October 22, 2020.

44. At all times referenced herein, MIZAN was an employee, agent and/or servant of the USA.

45. SUSAN J. BILLINGHURST HAMLET, P.A. (hereinafter referred to as "HAMLET") was and still is a physician's assistant duly licensed to practice medicine in the State of New York and practices medicine at MORRIS HEIGHTS.

46. HAMLET was and still is an employee of MORRIS HEIGHTS, a federally funded health center pursuant to Section 330 of the Public Health Service Act (42 U.S.C. 254B).

47. At all times referenced herein, HAMLET was deemed to be an employee of the federal government.

48. HAMLET was acting within the scope of her employment for the USA from June 20, 2019, continuously thereafter, up through and including October 22, 2020.

49. At all times referenced herein, HAMLET was an employee, agent and/or servant of the USA.

## FIRST CAUSE OF ACTION

50. UPADHYAH held himself out to the public, and specifically to plaintiff, as possessing and utilizing the proper degree of skill and learning necessary to render medical services in accordance with accepted medical practices and that he undertook to use reasonable care and diligence in the treatment of patients, and specifically, plaintiff.

51. HUERTA held herself out to the public, and specifically to plaintiff, as possessing and utilizing the proper degree of skill and learning necessary to render medical services in accordance with accepted medical practices and that she undertook to use reasonable care and diligence in the treatment of patients, and specifically, plaintiff.

52. SERAFIN held herself out to the public, and specifically to plaintiff, as possessing and utilizing the proper degree of skill and learning necessary to render medical services in

accordance with accepted medical practices and that she undertook to use reasonable care and diligence in the treatment of patients, and specifically, plaintiff.

53. MIZAN held himself out to the public, and specifically to plaintiff, as possessing and utilizing the proper degree of skill and learning necessary to render medical services in accordance with accepted medical practices and that he undertook to use reasonable care and diligence in the treatment of patients, and specifically, plaintiff.

54. HAMLET held herself out to the public, and specifically to plaintiff, as possessing and utilizing the proper degree of skill and learning necessary to render medical services in accordance with accepted medical practices and that she undertook to use reasonable care and diligence in the treatment of patients, and specifically, plaintiff.

55. The USA, through its agents, servants, employees, physicians, residents, interns, physicians assistants, nurse practitioners and other medical personnel, at MORRIS HEIGHTS, represented to the public at large and, more particularly, to plaintiff that it utilized and employed medical personnel possessing the proper degree of skill and learning necessary to render medical services in accordance with accepted medical practices and that it undertook to use reasonable care and diligence in the treatment of patients, including plaintiff YURUANNY HILARIO.

56. The USA, through its agents, servants, employees, physicians, residents, interns and other medical personnel at MORRIS HEIGHTS, rendered medical care and treatment to YURUANNY HILARIO from on or about December 23, 2014, continuously thereafter, up through and including October 20, 2020.

57. At all times relevant, the USA, through its agents, servants and/or employees, provided medical care and treatment to plaintiff at MORRIS HEIGHTS for a condition of a right breast lump.

58. UPADHYAH provided a continuous course of treatment to the plaintiff for a condition of right breast lump noted during the office visits of December 23, 2014 and March 20, 2015 and committed medical malpractice in failing to schedule and/or perform any follow up examination, radiological imaging, biopsy, referral for surgical consultation and/or referral for breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

59. HUERTA provided a continuous course of treatment to the plaintiff for a condition of right breast lump noted during the office visits of August 23, 2016, September 1, 2016, September 13, 2016, February 2, 2017 and September 19, 2017 and committed medical malpractice in failing to schedule and/or perform any follow up examination, radiological imaging, biopsy, referral for surgical consultation and/or referral for breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

60. SERAFINA provided a continuous course of treatment to the plaintiff for a condition of right breast lump noted during the office visits of October 4, 2018 and October 25, 2018 and committed medical malpractice in failing to review the results of the January 24, 2019 breast ultrasound and in failing to schedule and/or perform any follow up examination, radiological imaging, biopsy, referral for surgical consultation and/or referral for breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

61. MIZAN provided a radiological evaluation and interpretation of a breast ultrasound performed on January 24, 2019 for a condition of right breast lump and committed medical malpractice in failing to recommend, order and/or perform additional radiological testing and imaging including mammography, MRI, biopsy and/or follow up examination, surgical

consultation and/or breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

62. HAMLET provided a continuous course of treatment to the plaintiff for a condition of right breast lump noted during the office visits of June 20, 2019, September 12, 2019 and September 19, 2019 and committed medical malpractice in failing to schedule and/or perform any follow up examination, radiological imaging, biopsy, referral for surgical consultation and/or referral for breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

63. USA provided a continuous course of treatment to the plaintiff for a condition of right breast lump noted during the office visits from December 23, 2014 through to October 22, 2020 and committed medical malpractice in failing to schedule and/or perform any follow up examination, radiological imaging, biopsy, referral for surgical consultation and/or referral for breast clinic consultation, whereby plaintiff's condition of breast cancer could have been diagnosed at an earlier, more treatable stage.

64. That on October 12, 2020, plaintiff underwent biopsy of the right breast lump which diagnosed breast cancer leading to additional testing identifying Stage 3 breast cancer.

65. Defendant, and its officials, agents, servants, contractees and/or employees were negligent and did commit medical malpractice in failing to refer the plaintiff for radiological breast imaging, breast clinic consultation, breast surgeon consultation, and biopsy where a timely diagnosis of breast cancer should have been made and at an earlier stage.

66. The USA, itself, and through its agents, servants, employees, physicians, residents, interns and other medical personnel at MORRIS HEIGHTS, including but not limited to UPADHYAH, HUERTA, SERAFIN, MIZAN and HAMLET was/were negligent, careless and

departed from good and accepted medical practice in the medical care, treatment and services rendered to plaintiff from on or about December 23, 2014, continuously thereafter, up through and including October 22, 2020 and is vicariously liable for the carelessness, negligence and malpractice of all personnel and individuals who treated plaintiff.

67. As a result of the foregoing, YURUANNY HILARIO, was permanently injured, causing her to experience pain, suffering, mental anguish, incur expenses, and suffer an advancement of the stage of breast cancer, worsening of prognosis, additional treatments, surgery and therapies, loss of fertility, loss of chance for survival, all of which require and will continue to require medical treatment, and will continue to incur, medical expenses, lost earnings and other consequential damages.

68. The negligence, carelessness and medical malpractice was the competent producing and proximate cause of the injuries of the plaintiff for which recovery is sought herein.

69. The failure of defendant to render a timely diagnosis of breast cancer was a proximate cause of the plaintiff's injuries for which recovery is sought here.

70. As a result of the foregoing, YURUANNY HILARIO, has been damaged in the sum of SEVEN ($7,000,000.00) MILLION DOLLARS.

## DEMAND FOR TRIAL BY JURY

71. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the plaintiff demands a trial by jury in this action.

**WHEREFORE**, plaintiff demands judgment against the defendant in the sum of SEVEN ($7,000,000.00) MILLION DOLLARS on the First Cause of Action together with costs, interest and disbursements.

Dated: Garden City, New York
January 20, 2022

Respectfully submitted,

SULLIVAN PAPAIN BLOCK McGRATH
COFFINAS & CANNAVO, P.C.

By: _____
   Elizabeth Montesano
Attorneys for Plaintiff
1140 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 742-0707

## VERIFICATION

Elizabeth Montesano, an attorney duly admitted to practice in the State of New York, affirms the following under penalties of perjury:

I am a member of the law firm of SULLIVAN PAPAIN BLOCK MCGRATH COFFINAS & CANNAVO P.C., attorneys for the plaintiff in the above entitled action. I have read the foregoing COMPLAINT and know the contents thereof, and upon information and belief affirmant believes the matters alleged therein to be true.

The reason this Verification is made by the affirmant and not by plaintiff is that the plaintiff resides outside the county wherein I maintain my offices.

Dated: Garden City, New York
January 20, 2022

_____
ELIZABETH MONTESANO